**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**WILLIE ROBINSON, JR.**                                             **CIVIL ACTION**

**VERSUS**

**HOWARD PRINCE, ET AL**                                             **NO. 09-1060-BAJ-CN**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, October 4, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WILLIE ROBINSON, JR.**                                                    **CIVIL ACTION**

**VERSUS**

**HOWARD PRINCE, ET AL**                                                **NO. 09-1060-BAJ-M2**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the Petition for Writ of Habeas Corpus (R. Doc. 1) filed by Willie Robinson, Jr. ("Robinson"). The State of Louisiana ("the State") has filed an opposition (R. Doc. 16) to Robinson's petition.

## FACTS & PROCEDURAL BACKGROUND

On August 4, 2004, Robinson was arrested after his vehicle was searched following a traffic stop, and the arresting officer discovered a bag in the vehicle containing Hydrocodone and Diazepam pills, none of which were prescribed to Robinson or any of the other passengers in the vehicle. Robinson was subsequently charged by bill of information with one count of Possession with Intent to Distribute a Schedule II controlled dangerous substance and one count of Possession with Intent to Distribute a Schedule IV controlled dangerous substance, violations of La. R.S. 40:967 and La. R.S. 40:969. Following a jury trial, Robinson was found guilty as charged on July 19, 2005. He was sentenced, on October 6, 2005, to five (5) years imprisonment at hard labor on each count to be served consecutively. He filed a motion for new trial, which was denied by the trial court.

Robinson then appealed his conviction and sentence to the Louisiana First Circuit Court of Appeals in February 2006. The First Circuit affirmed his conviction and sentence

1

on September 20, 2006. Robinson applied for writs to the Louisiana Supreme Court, which application was denied on September 28, 2007.

In December 2007, Robinson filed an application for post-conviction relief in the state trial court, wherein he asserted two claims: (1) that the traffic stop and the subsequent search of his vehicle were illegal and without probable cause; and (2) ineffective assistance of counsel. The state trial court denied that application on February 14, 2008, and the First Circuit Court of Appeals and the Louisiana Supreme Court subsequently denied Robinson's writ applications during post-conviction proceedings. Robinson filed his present habeas petition on December 22, 2009, wherein he asserts the same two (2) claims that he raised during his post-conviction proceedings as well as a third "supplemental" claim that his sentencing was invalid because no presentence investigation report was completed prior to sentencing in violation of the Fed. R. Cr. P. 32(b)(1). Such third claim appears to have been raised and addressed on appeal in Robinson's "Assignment of Error Number Five."[1]

The State previously filed an opposition to Robinson's habeas petition, wherein it argued that such petition should be dismissed as procedurally barred. Disagreeing with the State's position, the undersigned issued a Report and Recommendation on May 13, 2010, recommending that the State's argument be rejected and that the State be ordered to address the merits of Robinson's claims. District Judge Tyson adopted the undersigned's recommendation as the Court's opinion in a July 1, 2010 Ruling and ordered the State to respond to the merits of Robinson's claims. The undersigned now considers

---

[1] In that assignment of error, Robinson contended that the state trial judge "committed manifest error when he denied the defendant's MOTION TO RECONSIDER SENTENCE, particularly where he failed to order a presentence investigation, even though he said that one would be ordered."

2

the State's arguments on the merits, which were filed into the record on August 16, 2010.

## LAW & ANALYSIS

In order for this Court to grant an application for a writ of habeas corpus as to any claim which has been previously adjudicated on the merits in state court,[2] the Court must find that adjudication of such claim: (1) resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (d)(2). In addition, determinations of factual issues made by state courts shall be presumed correct, unless particular statutory exceptions to 28 U.S.C. § 2254(d) are implicated, and the applicant has the burden of rebutting that "presumption of correctness" by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Collins*, 16 F.3d 626 (5th Cir. 1994). Thus, the presumption of correctness is properly invoked if the petitioner fails to contend that any exceptions to §2254(d) are applicable to his case and if the Court finds that there were no defects in the state court's procedures. *Id.* at 631.

**(1)   Claim No. 1 - Illegal traffic stop and search/seizure:**

As mentioned above, in this claim, Robinson contends that the traffic stop and the subsequent vehicle search that resulted in his arrest, conviction, and sentence were without probable cause and in violation of the Fourth Amendment. "The Fourth Amendment

---

[2] The three claims that Robinson has raised in his habeas petition appear to have been exhausted through the state court system, in that he raised his first and second claims during post-conviction proceedings and his third claim on direct appeal.

3

protects individuals from unreasonable searches and seizures. Traffic stops are considered seizures within the meaning of the Fourth Amendment." *U.S. v. Banuelos-Romero*, 597 F.3d 763, 766 (5th Cir. 2010), citing *United States v. Grant*, 349 F.3d, 192, 196 (5th Cir. 2003)(citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). To determine whether a seizure is reasonable, a court is to consider: (1) "whether the officer's action was justified at its inception," and (2) "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id.*, citing *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004)(en banc)(citing *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Id.*, citing *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)(citing *United Staes v. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995)). Pursuant to a valid traffic stop, "an officer can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation." *Id.*, citing *United States .v Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993). The "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop . . ." *Id.*, at 766-67, citing *Brigham*, at 507. However, if "additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *Id.*, at 767, citing *Lopez-Moreno*, at 431. An officer has reasonable suspicion when he "can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and

4

seizure." *Id.*, citing *Lopez-Moreno*, at 430 (citing *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002)). Courts are to look at the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Id.* "[R]easonable suspicion need not rise to the level of probable cause." *Id*, citing *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)).

The record in this matter confirms that the officer who stopped the vehicle in which Robinson was riding on the date of his arrest had an objectively reasonable suspicion that some sort of illegal activity was taking place, in that he stopped the vehicle based upon the commission of several traffic violations. Specifically, the officer testified that he stopped the vehicle for speeding, because the occupants were not wearing seatbelts, and because of improper lane use. Accordingly, the initial traffic stop appears to have been "justified at its inception."

Furthermore, the testimony provided by the arresting officer both at trial and at a suppression hearing confirms that, during the course of the traffic stop and before the initial purpose of that stop had been fulfilled, additional reasonable suspicion of criminal activity arose which justified continuing the detention until the new reasonable suspicion had been dispelled or confirmed. Specifically, the arresting officer testified that, after he stopped the vehicle in question (which vehicle was owned by Robinson but in which he was riding as a passenger at the time of the traffic stop), the arresting officer asked the driver for her driver's license. She responded that she did not have one in her possession because it had been suspended. The officer ran the driver's driving record through his dispatcher and confirmed that she was under suspension and further obtained information that she had an

5

outstanding felony warrant for her arrest for a probation violation. The officer also testified that, as soon as he stopped the vehicle, Robinson attempted to exit the vehicle to explain why the driver was driving the vehicle instead of him. The officer asked him to remain in the vehicle, and Robinson did so. The officer later explained to Robinson that the driver was being detained to confirm an outstanding arrest warrant and that Robinson had the right to stay on the scene while the warrant was being confirmed if he wished to do so, and Robinson indicated that he wanted to wait at the scene.

The officer further testified that Robinson informed him that the reason he was not driving his vehicle was because he had been passing out earlier in the day and could not stay awake so he did not want to drive because he did not want to wreck. The officer observed Robinson to be "extremely nervous" and to have "slurred speech." He also noted that Robinson's hands were shaking and that he had a "weird demeanor about him," which suggested to the officer that "more criminal activity was afoot" than simply a traffic violation. In light of such specific and articulable facts concerning Robinson's demeanor and the other circumstances surrounding the traffic stop, such as the driver's suspended license and a possible arrest warrant, the arresting officer reasonably suspected and inferred that additional criminal wrongdoing could be occurring, such that further detention, questioning, and a search were warranted.

According to the arresting officer's testimony, in light of Robinson's unusual, nervous behavior, he asked Robinson if he could ask him some questions, and Robinson indicated that that "would be fine." The officer explained to Robinson that, in Louisiana, there was a problem with people transporting illegal things in their cars, such as illegal weapons, drugs, containers of alcohol, stolen things, etc. The officer asked Robinson if he had

6

anything illegal in the vehicle, including illegal substances or pills, and Robinson responded that he did not.  The officer testified that he asked Robinson if he could search his vehicle and that Robinson said that he could.  During that search, the officer found a brown paper bag containing three pill bottles, which were labeled as being prescribed for two individuals who were not riding in the vehicle in question.  According to the officer, the pill bottles contained numerous different types of pills that were not consistent with the types and amounts of pills documented on the labels.

The State contends that the officer's search of the vehicle was legal because the search was conducted pursuant to the vehicle owner's consent.  The undersigned agrees.  A consensual search is a well-established exception to the Fourth Amendment's warrant requirement if the consent is freely and voluntarily given.  *U.S. v. Mata*, 517 F.3d 279, 290 (5th Cir. 2009).[3]  In determining whether consent was free and voluntary, the court is to consider the "totality of the circumstances," including the following six (6) factors:  (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and

---

[3] The text of the Fourth Amendment does not state conclusively what types of searches are reasonable, but the U.S. Supreme Court has created two (2) important presumptions in that area.  First, the Supreme Court has held that police officers generally must conduct searches pursuant to probable cause and with a valid search warrant.  *Tamez v. City of San Marcos, Texas*, 118 F.3d 1085 (5th Cir. 1997), citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 514, 19 L.Ed.2d 576 (1967).  However, that is merely a presumption, and there are several well-established exceptions to the probable cause and warrant requirements, including investigatory detentions, searches incident to a valid arrest, seizure of items in plain view, exigent circumstances, consensual searches, vehicle searches, container searches, and searches in which the special needs of law enforcement make the probable cause requirement impracticable.  *Id.*, citing *generally*, David Orlin, et al., *Warrantless Searches and Seizures*, 85 Geo. L.J. 847 (1997)(collecting cases).

intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *Id*.

When those factors are considered in the context of the present case, the undersigned finds that the search in question was conducted pursuant to Robinson's consent, which was freely and voluntarily given. First, it should be noted that Robinson did not present any evidence, at the suppression hearing or at trial, contradicting the arresting officer's testimony that he consented to a search of his vehicle. In fact, at the suppression hearing, Robinson's counsel specifically stated that "it appears that Mr. Robinson consented for Lieutenant Chris Green to search the vehicle." *See*, Trial transcript, p. 105. The fact that the central element of Robinson's defense at trial was that he was not doing anything illegal in possessing the substances in question since he was merely picking the medications up from the pharmacy and holding them as a favor for two sick friends also suggests that Robinson's consent to the search of his vehicle was voluntary. Moreover, at the time that Robinson gave that consent, his custodial status was still voluntary. Although Robinson had been informed by the officer that the driver was possibly going to be arrested for a probation violation, the officer had not told Robinson that he was going to be arrested nor did he have any basis to arrest Robinson until after the search had been conducted and the controlled substances discovered. While the officer asked Robinson a few questions prior to searching the vehicle, Robinson agreed to answer those questions, and there is no evidence that any threats were made that the police intended to arrest him if he did not answer questions or did not consent to a search of his vehicle. As such, at the time he consented to the search, Robinson was still free to go as he pleased. *Id.*, at 291.

The record also does not reveal that the police used any coercive procedures in

obtaining consent to search the vehicle.  The police did not have their weapons drawn, and it does not appear that any officer threatened or yelled at Robinson in order to obtain consent to search the vehicle.  Instead, it appears that Robinson gave verbal consent without pressure and that he was fully cooperative with the police in answering questions and consenting to the search.  Robinson has never presented any evidence that he was unaware of his rights to refuse the search or to terminate it at any time.  Additionally, there is absolutely no evidence in the record to suggest that Robinson did not understand the arresting officer's questions or that he did not comprehend what consenting to a search of his vehicle meant.  Finally, considering Robinson's defense that his possession of the controlled substances was not illegal since he was merely possessing them as a favor for two sick friends, he apparently did not believe that the substances constituted incriminating evidence that would be used against him.[4]  Accordingly, because the totality of the circumstances surrounding the search in question suggest that Robinson's consent to that search was free and voluntary, his argument that the search was in violation of the Fourth Amendment lacks merit and should be dismissed.

**(2)     Claim No. 2 - Ineffective Assistance of Counsel:**

A habeas petitioner seeking to prove ineffective assistance of counsel must meet the two-pronged burden of proof set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The petitioner must affirmatively demonstrate:

   (1)     that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the

---

[4] *See, Mata*, at 291 (where the defendants indicated, at the time that they consented to a search, that they "had nothing to hide," the Fifth Circuit found that the defendants believed no incriminating evidence would be found upon search).

9

        defendant by the Sixth Amendment; and

(2)     that the deficient performance "prejudiced" his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial where the result is reliable.

*Strickland*, 104 S.Ct. at 2064.[5]

       Robinson contends that his counsel was ineffective because he did not file any

---

[5] To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). The court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. *Bridge*, 838 F.2d at 773; *Martin*, 796 F.2d at 816. When it is apparent that the alleged incompetent acts of the attorney were in fact conscious strategic or tactical trial decisions, review of the acts must be "highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2587 91 L.Ed.2d 305 (1986). Mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment. *Strickland*, 104 S. Ct. at 2066.

     If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must also affirmatively demonstrate prejudice from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 104 S. Ct. at 2067. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,104 S.Ct. at 2068. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.* The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Martin*, 796 F.2d at 816-17. A conscious and informed tactical decision cannot be the basis for constitutionally ineffective assistance of counsel unless it is "so ill-chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F. 2d 199, 206 (5th Cir. 1982).

pretrial motions on his behalf (such as a motion to suppress evidence and a motion to recuse the assistant district attorney even though he knew that she was the wife of the arresting officer) and any post-trial motions (such as a motion to arrest the verdict or a motion for post-verdict judgment of acquittal).  A review of the record in this matter, however, indicates that Robinson's contentions are unfounded.  His counsel did, in fact, file several pre-trial and post-trial motions on his behalf, including a motion to suppress the evidence, a motion for preliminary examination, a motion for discovery and for the initial offense report, a motion for new trial, a motion for appeal, a motion to reconsider sentence, a motion for concurrent sentence, and a motion to amend sentence.

While his counsel did not file a motion to recuse the assistant district attorney, the undersigned agrees with the State that his counsel's failure to do so does not constitute ineffective assistance of counsel under the standards set forth in *Strickland* because such decision appears to have been a tactical or strategic one.  Rather than seeking to have the assistant district attorney recused on the basis of her marital relationship with the arresting officer, Robinson's counsel fully informed the jury of such relationship and attempted to use it as a way of damaging the credibility of the arresting officer at trial.[6]  Robinson has not overcome the strong presumption that such conduct by his counsel was anything other than "sound trial strategy," and as a result, he has not established the "deficiency" prong of the *Strickland* analysis.

---

[6] Although Robinson attached an affidavit by his trial counsel to his post-conviction relief application and his habeas petition, wherein his counsel indicates that he "never clearly understood the relationship of" the arresting officer and the prosecuting assistant district attorney, the trial transcript suggests otherwise.  Defense counsel specifically questioned both the arresting officer and the evidence custodian of the West Feliciana Parish Sheriff's Office at trial concerning the marital relationship of the arresting officer and the assistant district attorney.

Moreover, Robinson has not demonstrated that the outcome of his case would have been any different had his counsel filed a motion to recuse the assistant district attorney on the basis of her marriage to the arresting officer. Even if the motion to recuse had been filed, there is no guarantee that it would have been granted by the trial judge, and even assuming the motion had been filed and granted, it only would have resulted in a new prosecutor being assigned to prosecute the case against Robinson. It would not have changed the evidence and made it any more favorable to Robinson. The case against Robinson might actually have been even stronger had the motion to recuse been filed and granted since, in that event, Robinson's counsel would not have been able to use the assistant district attorney's relationship with the arresting officer as a way to discredit the testimony and evidence elicited from the arresting officer. In sum, because there is no evidence before the Court that the outcome of Robinson's trial would have been any different had another district attorney prosecuted the case against him, Robinson has failed to establish the second essential element of his ineffective assistance of counsel claim (*i.e.*, the "prejudice" element), and such claim should therefore also be dismissed.[7]

**(3)     Claim No. 3 - No presentence investigation/report:**

As mentioned above, in his final claim, Robinson contends that his sentence is invalid because a presentence investigation was never ordered and a presentence investigation report was not completed in violation of Fed. R. Cr. P. 32(b)(1). Such claim

---

[7] Put another way, even if Robinson's counsel's failure to file a motion to recuse is considered a professionally unreasonable error, since Robinson has not demonstrated that there is a reasonable probability that the outcome of his trial would have been different if another district attorney had prosecuted the case, he is not entitled to any relief on this claim. *See, Strickland*, at 691.

lacks merit because it is based upon an alleged violation of the Federal Rules of Criminal Procedure, which do not apply in the state court system. Furthermore, even if the state criminal procedure rule that most closely corresponds to Fed. R. Cr. P. 32(b)(1), *i.e.*, La. C.Cr.P. art. 875, is considered, Robinson's sentence would not be invalidated by virtue of the failure to complete a presentence investigation and related report.  La. C.Cr.P. art. 875 provides that, if a defendant is convicted of a felony offense or a misdemeanor offense that has been reduced from a felony, the court *may* order the Department of Public Safety and Corrections, division of probation and parole, to make a presentence investigation.  Thus, the ordering and completion of a presentence investigation and report is within the discretion of the state trial judge and is not mandatory.  The failure to order and/or complete same does not invalidate a defendant's sentence.  Accordingly, Robinson's third claim should also be dismissed with prejudice.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Petition for Writ of Habeas Corpus (R. Doc. 1) filed by Willie Robinson, Jr. should be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, October 4, 2010.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**